IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CHRISTOPHER SCOTT PETERSON,**<br><br>     **Plaintiff,**<br><br>v.<br><br>**WILLIAM BRYAN PORTER, a citizen of the State of Oregon in his official and individual capacities; TILLAMOOK COUNTY, an Oregon municipal subdivision; and RONALD LEWIS TEED, a citizen of the State of Oregon,**<br><br>     **Defendants.** | **3:16-cv-01955-BR**<br><br>**OPINION AND ORDER** |

**BROWN, Judge.**

This matter comes before the Court on Defendant William Bryan Porter's Motion (#16) to Dismiss.

For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion to Dismiss.

## BACKGROUND

### I. Factual Background

The following facts are taken from Plaintiff Christopher Scott Peterson's First Amended Complaint (FAC)(#52) and accepted as true for purposes of this Motion.

Plaintiff is a general contractor in Tillamook County.

Plaintiff was engaged in various building projects with Defendant Ronald Lewis Teed beginning in 2007, including a contract signed in August 2007 to significantly remodel Teed's house in Tillamook County.  Disputes arose between Plaintiff and Teed, and in May 2009 Teed cancelled the 2007 construction contract with Plaintiff.

Plaintiff alleges there were various subsequent threatening interactions between himself and Teed.  In September 2009 Plaintiff filed a uniform stalking complaint against Teed with the Astoria Police Department.

Plaintiff alleges Teed, his attorney, and Porter (District Attorney for Tillamook County and Teed's brother-in-law) met in March 2011 to "fabricate charges" of felony theft against Plaintiff.  Plaintiff further alleges Porter told Teed to file a complaint with the Tillamook County Sheriff's Department.  Teed filed the complaint, but he was told by the Tillamook County Sheriff's Department that there was not any evidence of a crime and that he would have to file a civil lawsuit.  In April 2011 Teed sent a letter to Porter asking him to pursue criminal charges against Plaintiff.

On May 19, 2011, Porter charged Plaintiff with Aggravated Theft.  Plaintiff alleges Porter obtained a warrant to arrest Plaintiff by making false representations to a judge.  Plaintiff also alleges Porter made further false representations to the

court on September 19, 2011, at Plaintiff's arraignment hearing.

On September 30, 2014, a jury trial on Plaintiff's theft charges commenced in Tillamook County Circuit Court.  The jury acquitted Plaintiff at the conclusion of a five-day trial.

## II.  Procedural Background

On October 16, 2016, Plaintiff filed a civil action in this Court against Defendants Porter, Tillamook County, and Teed alleging they violated Plaintiff's civil rights pursuant to 28 U.S.C. § 1983 by arresting and prosecuting him in Tillamook County.

On January 13, 2017, Teed filed an Answer to Plaintiff's Complaint.  Also on January 13, 2017, Porter and Tillamook County filed Motions (#16, #17 respectively) to Dismiss Plaintiff's Complaint.

On April 26, 2017, Plaintiff filed a Stipulated Notice (#43) of Dismissal as to Tillamook County.

On April 28, 2017, the Court entered an Order (#44) dismissing Tillamook County.

On May 24, 2017, Plaintiff filed a Motion (#47) for Leave to File Amended Complaint.  Over Porter's objection, the Court granted Plaintiff's Motion.

On June 14, 2017, Plaintiff filed his FAC alleging claims against Porter for violation of Plaintiff's Fourth and Fourteenth Amendment rights to be free from falsification of evidence and

from malicious prosecution pursuant to § 1983.  Plaintiff also alleges common-law claims against Porter and Teed for malicious prosecution, tortious inference with business relations, and intentional infliction of emotional distress.

Porter's Motion to Dismiss was pending at the time that Plaintiff filed his FAC, and the Court gave the parties leave to file supplemental memos regarding the Motion.  On July 7, 2017, and July 21, 2017, Porter and Plaintiff filed their supplemental memoranda.

## **STANDARDS**

To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.* at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Twombly*, 550 U.S. at 546).  When a complaint is based on facts that are "merely consistent with" a defendant's liability, it "stops short of the line between

possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). *See also Bell Atlantic*, 550 U.S. at 555-56. The court must accept as true the allegations in the complaint and construe them in favor of the plaintiff. *Din v. Kerry*, 718 F.3d 856, 859 (9th Cir. 2013).

The pleading standard under Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). *See also* Federal Rule of Civil Procedure 8(a)(2). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555). A complaint also does not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)(citing *Jacobson v. Schwarzenegger,* 357 F. Supp. 2d 1198, 1204 (C.D. Cal. 2004)). A court, however, "may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Id.* (quoting *Parrino v. FHP*,

5 – OPINION AND ORDER

*Inc.*, 146 F.3d 699,706 (9th Cir. 1998), *superseded by statute on other grounds as stated in Abrego v. Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006)).

**DISCUSSION**

Porter moves to dismiss Plaintiff's FAC on the ground that Plaintiff fails to allege sufficient facts to overcome Porter's assertion that he is entitled to absolute prosecutorial immunity. Porter contends all of his actions as alleged by Plaintiff were performed in his role as a prosecutorial advocate, and, therefore, he is protected by such immunity.

In response Plaintiff contends absolute prosecutorial immunity does not apply on the ground that Porter's actions were taken before there was any probable cause to believe a crime had been committed, and, therefore, Porter was acting as an investigator rather than an advocate. Plaintiff also argues absolute prosecutorial immunity no longer applies to malicious-prosecution claims under Oregon law.

**I. The Propriety of Defendant's Motion to Dismiss at this Stage of the Proceedings**

As noted, Porter challenges the sufficiency of Plaintiff's allegations. Porter, however, does not challenge the sufficiency of Plaintiff's allegations to state a claim, but instead challenges the sufficiency of Plaintiff's allegations to overcome Porter's defense that he has absolute prosecutorial immunity from this action.

Generally a party would allege such an affirmative defense in their answer to the complaint and then file a motion for summary judgment based on that defense. See *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005). The Supreme court, however, has considered the defense of absolute prosecutorial immunity at the Rule 12(b)(6) stage appropriate on the ground that "federal courts should be particularly reluctant to relax pleading requirements in cases such as this, where the purpose of the . . . immunity doctrine is to free officials from the concerns of litigation, including the avoidance of disruptive discovery." *Ashcroft v. Iqbal*, 556 U.S. at 685 (citing *Siegert v. Gilley*, 500 U.S. 226, 236 (1991)). *See also Ismail v. Cty of Orange*, 917 F. Supp. 2d 1060, 1069 (C.D. Cal. 2012), *aff'd* 676 F. App'x 690 (9th Cir. 2017). Thus, courts have allowed motions to dismiss based on absolute prosecutorial immunity to proceed at this preliminary stage. *See*, *e.g.*, *Imbler v. Pachtman*, 424 U.S. 409 (1976); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

The Court notes, nevertheless, that the party asserting the defense continues to bear the burden of proof. *Id.* (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991)).

## II. Plaintiff's Allegations

Plaintiff alleges in his FAC the following specific acts by Porter:

On March 17, 2011, Porter met with Teed and his attorney "to fabricate charges of felony theft in order to give Porter, in the

event of a conviction, discretion as District Attorney to impose restitution sanctions for the benefit of Teed" (¶ 30);

Porter knew Plaintiff had not committed theft (¶ 30);

Porter told Teed to file a complaint with the Tillamook County Sheriff's office (¶ 30);

Porter did not conduct any investigation of Teed's allegations (¶ 32);

Porter charged Plaintiff on May 19, 2011, with aggravated theft "without any probable cause, and knowing that the charges against [Plaintiff] were fabricated" (¶ 33);

Porter brought the charges at Teed's "instigation and insistence" (¶ 33);

Porter made knowingly false representations to the court to obtain an arrest warrant (¶ 34);

Porter made knowingly false representations to the court at Plaintiff's arraignment (¶ 35);

Porter engaged in abusive and unjust prosecutorial tactics in various ways that violated Plaintiff's civil rights (¶ 38); and

Porter conducted the trial against Plaintiff (¶ 39).

### III. Prosecutorial Immunity

In *Genzler v. Loganbach* the Ninth Circuit noted a prosecutor is protected by absolute immunity from liability for damages under § 1983 "when performing the traditional functions of an advocate." 410 F.3d 630, 636 (9th Cir. 2005)(quoting *Kalina v. Fletcher*, 522 U.S. 118, 131 (1997)). "[T]he actions of a

prosecutor[, however,] are not absolutely immune merely because they are performed by the prosecutor." *Id.* (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). Prosecutorial immunity depends on "the nature of the function performed, not the identity of the actor who performed it." *Id*. (quoting *Kalina,* 522 U.S. at 127). Prosecutors are entitled to qualified immunity rather than absolute immunity when they perform administrative functions or "investigative functions normally performed by a detective or police officers." *Id*. (quoting *Kalina,* 522 U.S. at 126).

The Supreme Court has consistently "emphasized that the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Id.* (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)).

To qualify as advocacy entitled to immunity an act must be "intimately associated with the judicial phase of the criminal process." *Id.* (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).

> [I]n deciding whether to accord a prosecutor immunity from a civil suit for damages, a court must first determine whether a prosecutor has performed a quasi-judicial action. If the action was part of the judicial process, the prosecutor is entitled to the protection of absolute immunity whether or not he or she violated the civil plaintiff's constitutional rights.

*Broam v. Bogan*, 320 F.3d 1023, 1029 (9th Cir. 2003).

"When a prosecutor steps outside of the advocate's role, however, his or her conduct is protected by immunity only to the

extent that any other individual would be protected in performing the same function." *Cruz v. Kauai Cnty.*, 279 F.3d 1064, 1067 (9th Cir. 2002). Accordingly, prosecutors are not entitled to absolute immunity for performing investigative functions or when serving the function of a witness by personally attesting to facts. *See Kalina*, 522 U.S. at 507-10. *See also Torres v. Goddard*, 793 F.3d 1046, 1053 (9th Cir. 2015).

Ultimately "the absolute immunity that protects the prosecutor's role as an advocate is not grounded in any special 'esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself.'" *Kalina*, 522 U.S. at 127. *See also Slater v. Clarke*, 700 F.3d 1200, 1203 (9th Cir. 2012).

As the court stated in *Genzler,* the analysis as to whether prosecutorial acts constitute advocacy or police-type investigative work "is complicated by the fact that the Supreme Court has resisted any attempt to draw a bright-line between the two." 410 F.3d at 637. The *Genzler* court noted "[t]he question is whether a prosecutor's investigation is of the type normally done by police, in which case prosecutors enjoy only qualified immunity, or whether an investigation is bound up with the judicial process, thus affording prosecutors the heightened protection of absolute immunity." 410 F.3d at 638.

In *Buckley v. Fitzsimmons* the court noted "[a] prosecutor

extent that any other individual would be protected in performing the same function." *Cruz v. Kauai Cnty.*, 279 F.3d 1064, 1067 (9th Cir. 2002). Accordingly, prosecutors are not entitled to absolute immunity for performing investigative functions or when serving the function of a witness by personally attesting to facts. *See Kalina*, 522 U.S. at 507-10. *See also Torres v. Goddard*, 793 F.3d 1046, 1053 (9th Cir. 2015).

Ultimately "the absolute immunity that protects the prosecutor's role as an advocate is not grounded in any special 'esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself.'" *Kalina*, 522 U.S. at 127. *See also Slater v. Clarke*, 700 F.3d 1200, 1203 (9th Cir. 2012).

As the court stated in *Genzler,* the analysis as to whether prosecutorial acts constitute advocacy or police-type investigative work "is complicated by the fact that the Supreme Court has resisted any attempt to draw a bright-line between the two." 410 F.3d at 637. The *Genzler* court noted "[t]he question is whether a prosecutor's investigation is of the type normally done by police, in which case prosecutors enjoy only qualified immunity, or whether an investigation is bound up with the judicial process, thus affording prosecutors the heightened protection of absolute immunity." 410 F.3d at 638.

In *Buckley v. Fitzsimmons* the court noted "[a] prosecutor

neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." 509 U.S. 259, 274 (1993). The Court further stated "a determination of probable cause, however, does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards. Even after that determination . . . a prosecutor may engage in 'police investigative work' that is entitled to only qualified immunity." *Id.* at 274 n.5.

## IV. Analysis

### A. Pre-Indictment Activity

Plaintiff contends Porter's pre-indictment activities were not "intimately associated with the judicial phase of the criminal process"; not "traditional functions of an advocate"; and, therefore, not subject to absolute prosecutorial immunity. Plaintiff alleges Porter met with Teed in order to fabricate charges against Plaintiff, Porter knew Plaintiff had not committed any theft, and Porter did not conduct any investigation. In fact, according to Plaintiff, Porter filed the criminal charges against Plaintiff in conspiracy with Teed and at his insistence after his meeting with Teed. Indeed, Plaintiff contends Porter took all of these actions without probable cause, and, therefore, under the holding in *Buckley*, Porter was not acting in the role of an advocate because he did not have probable cause. Thus, according to Plaintiff, Porter was, in effect, not acting as an advocate when he "conspired" with Teed to initiate charges against Plaintiff.

Porter, however, characterizes his filing of charges against Plaintiff as the result of his "professional evaluation of the evidence" obtained from Teed as the basis for determining whether to proceed with criminal prosecution. Thus, Porter asserts such activity was in his function as an advocate.

As the Court noted in *Buckley,* "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." 509 U.S. at 273. The Court stated:

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand.

The Court further noted:

> The question, then, is whether the prosecutors have carried their burden of establishing that they were functioning as "advocates" when they were endeavoring to determine whether the bootprint at the scene of the crime had been made by petitioner's foot. A careful examination of the allegations concerning the conduct of the prosecutors during the period before they convened a special grand jury to investigate the crime provides the answer. [reference omitted.] The prosecutors do not contend that they had probable cause to arrest petitioner or to initiate judicial proceedings during this period. Their mission at that time was entirely investigative in character. A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested.

*Id.* at 273-74.

Although the Supreme Court has not announced a "bright-line" for determining when a prosecutor's acts constitute advocacy or police-type investigative work, the Court has clearly

held absolute immunity does not apply until the prosecutor has probable cause to bring charges against an individual.

As noted, Plaintiff alleges Porter met with Teed and his attorney "to fabricate charges" against Plaintiff, and Porter later filed those charges "without any probable cause, and knowing that the charges against [Plaintiff] were fabricated." The Court must accept these allegations as true for purposes of this Motion. *See Din v. Kerry*, 718 F.3d 856, 859 (9th Cir. 2013). Based on Plaintiff's allegations, the Court infers Porter knew he did not have probable case to proceed, and, Porter, therefore, was not acting in his role as an advocate.

On this record the Court concludes Plaintiff's allegations against Porter for his pre-indictment conduct are sufficient to overcome Porter's Motion at this early stage of the case. Specifically, the Court must infer for purposes of this Motion that Porter was conspiring pre-indictment to make false criminal accusations against Plaintiff, and, therefore, Porter could not have been acting as an advocate merely evaluating the evidence to determine whether he had probable cause to charge Plaintiff. In the absence of any case authority that prosecutorial immunity applies in such circumstances, Porter has not met his burden to establish conclusively his not-yet-pled affirmative defense of prosecutorial immunity for his pre-indictment activity.

Accordingly, the Court **DENIES** Porter's Motion to the extent that he seeks dismissal of Plaintiff's pre-indictment allegations

at this stage on the basis of absolute prosecutorial immunity.

B.   **Post-Indictment Activity**

According to Plaintiff, after initiating the charges against Plaintiff, Porter made false representations in order to obtain an arrest warrant. Plaintiff also alleges Porter made false representations during Plaintiff's arraignment and trial and engaged in conduct during trial that violated Plaintiff's civil rights.

Porter, in turn, contends his conduct after he brought criminal charges against Plaintiff was within his duty as an advocate, and, therefore, Plaintiff's allegations are insufficient to defeat immunity.

In *Burns v. Reed* the court held absolute immunity applied to a prosecutor's "appearance in court in support of an application for a search warrant and the presentation of evidence at that hearing." 500 U.S. 478, 492 (1991).

In *Imbler v. Pachtman*, the seminal case on absolute prosecutorial immunity, the Supreme Court held "in initiating a prosecution and in presenting the State's case," a prosecutor is immune from a civil suit for damages under § 1983. 424 U.S. 409, 431 (1976). This immunity covers the knowing use of false testimony at trial, the suppression of exculpatory evidence, and malicious prosecution. *Id.* at 416. The Court reasoned these activities are "intimately associated with the judicial phase of the criminal process." *Id.* at 430. In *Imbler* the Court observed although absolute "immunity . . . leave[s] the genuinely wronged

defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty," absolute immunity for prosecutorial advocacy is, nevertheless, justified because "the alternative of qualifying a prosecutor's immunity would disserve the broader public interest" in protecting the prosecutor's abilities to exercise independent judgment and to advocate vigorously without the threat of retaliation. *Id.* at 429, 432.

On this record the Court concludes Porter's actions post-indictment as alleged by Plaintiff constitute conduct within his role as advocate, and, therefore, Porter has satisfied his burden to prove his affirmative defense and is entitled to absolute prosecutorial immunity.

Accordingly, the Court **GRANTS** Porter's Motion to Dismiss as to his post-indictment conduct.

## V. Prosecutorial Immunity under Oregon Law

Plaintiff also brings claims for malicious prosecution, intentional interference with business relations, and intentional infliction of emotional distress under Oregon law. Plaintiff contends absolute immunity no longer applies to malicious-prosecution claims under Oregon law, and, therefore, Porter is not entitled to absolute prosecutorial immunity for his actions as alleged in Plaintiff's state law claims. Plaintiff relies on *Mantia v. Hanson*, 190 Or. App. 412 (2003), to support his position. *Mantia*, however, was a civil action based on an employer's alleged wrongful discharge; did not arise out of a

criminal prosecution; was not brought under § 1983; and, therefore does not apply here.

In summary, the Court concludes Plaintiff's allegations in his FAC are sufficient to state a claim that Porter was not acting in his role as a prosecutorial advocate before initiating charges against Plaintiff, and, therefore, Porter is not entitled to absolute prosecutorial immunity for such pre-indictment conduct. Porter is, however, entitled to absolute prosecutorial immunity for his post-indictment actions.

## CONCLUSION

For the reasons stated, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion (#16) to Dismiss as set out in this Opinion and Order.

The Court **DIRECTS** Plaintiff to file **no later than August 28, 2017,** a Second Amended Complaint consistent with this Opinion and Order. The Court also **DIRECTS** Defendant Porter to file **no later than September 8, 2017,** his Answer to Plaintiff's Second Amended Complaint.

The Court sets a Rule 16 Conference for 2:00 p.m., September 13, 2107. The Court **DIRECTS** all parties to confer regarding case-management proceedings and to submit no later than September 8, 2017, a single joint proposed case-management schedule.

IT IS SO ORDERED.

DATED this 18th day of August, 2017.

/s/ Anna J. Brown

ANNA J. BROWN
United States Senior District Judge

17- OPINION AND ORDER